**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FRILOT L.L.C.** | **CIVIL ACTION NO. 09-4189** |
| **VERSUS** | **SECTION "B"** |
| **TIMOTHY MARTIN MCCLANTOC AND CORE PRODUCTS, INC.** | **MAGISTRATE "4,"** |

## ORDER AND REASONS

Plaintiff, Frilot L.L.C.'s Motion for Summary Judgment against the Defendant Timothy M. McClantoc ("McClantoc"), Rec. Doc. 13, is **DENIED** at this time[1].

## BACKGROUND

Jurisdiction in this case is based on Diversity, 28 U.S.C. § 1332. Frilot states that McClantoc is solidarily liable with Core Products, Inc. ("Core Products") for non-payment of attorney fees. Frilot represented McClantoc and Core Products in defense of a lawsuit instituted by Acadiana Plastics Manufacturing Inc. for alleged patent infringement(Rec. Doc 13-1). Frilot contends that an 'Engagement Letter' signed by Defendant (Rec. Doc. 13-5) establishes McClantoc's and Core Products' solidary liability to Frilot. Furthermore, Plaintiff contends that pursuant to Louisiana's Open Account Statute, La. R.S. 9:2781, the contract between Frilot and McClantoc is an "open account" and since more than thirty days have passed since Frilot made written demand on McClantoc correctly setting forth the amount owed, Frilot is

---

[1] We are grateful for the work on this case by Adam N. Matasar, a Tulane Law School extern with our chambers.

entitled to a judgment for the amount owed plus an award for the reasonable attorney fees incurred in the prosecution and collection of its claim (Rec. Doc. 13-1). In support, Frilot maintains that McClantoc signed the Engagement Letter on his own behalf; never discussed the allocation of costs between the defendants; McClantoc had a pecuniary interest correlated to Core Products' defense; in light of Acadiana Plastics' complaint, Frilot's defense of both McClantoc and Core Products was one and the same; and the obligation should be deemed joint and indivisible (Rec. Doc. 13-1).

McClantoc concedes that the engagement letter establishes Frilot's representation of both McClantoc and Core Products. However, he argues that the letter was addressed to McClantoc as the President and CEO of Core Products, and that it was in that official, representative capacity that he signed the Engagement Letter. McClantoc also argues that in keeping with normal and customary business practices, Core Products was solely responsible for all legal fees charged by Frilot. During Frilot's representation of McClantoc, McClantoc was dismissed as a defendant in the patent infringement action on July 17. According to McClantoc, all legal services rendered after that date were for the exclusive benefit of his company, Core Products (Rec. Doc. 21). Lastly, he argues that summary judgment would be inappropriate at this stage of the litigation because the parties

have engaged in a minimal amount of discovery, exchanging only initial and supplementary initial disclosures (Rec. Doc. 21).

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. <u>Id</u>. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. <u>Travelers Ins. Co. v. Liljeberg Enter., Inc</u>. 7 F.3d 1203, 1207 (5th Cir. 1993).

"Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent

or from the law." La. Rev. Stat. Ann. § 1796. "A solidary obligation may arise even though the parties have not used the words 'solidarity' or 'in solido,' provided that their intent has been clearly expressed." La. Rev. Stat. Ann. § 1796, Comment b. Where several parties obligate themselves by any clear expression of their will whereby they show that they intend to individually be responsible for the performance of the whole obligation, the obligation is solidary on the part of the obligor. <u>Berlier v. A.P. Green Indus., Inc., et al.</u>, 815 So.2d 39, 45 (La. 2002). However, a solidary obligation is never presumed, and must be expressly indicated. <u>Id</u>. Furthermore, Louisiana Civil Code article 1847 provides that parol evidence is generally inadmissable to establish obligations to pay the debt of a third person, but a well-recognized exception applies in circumstances whereby the promise to pay is "prompted by a pecuniary or business motivation on the part of the promisor." <u>Deutsch, Kerrigan & Stiles v. Fagan</u>, 665 So.2d 1316, 1320 (La. Ct. App. 1st Cir. 1995).

In <u>Fagan</u>, a law firm brought a civil action under Louisiana's Open Account statute to recover unpaid legal fees stemming from the law firm's representation of a client in connection with civil and criminal charges brought against both the client personally as well as against the client's various corporations of which he was the CEO and president. <u>Id</u>. at 1318-

19. The court held that the Defendant had clearly indicated his intent to be bound solidarily by oral agreement. Id. at 1321 ("Before agreeing to represent the defendants, Bernard Marcus . . . DK&S's managing partner . . . insisted, however, that Fagan agree to be personally liable for *all* fees and expenses . . . Fagan told Marcus that he understood and agreed to DK&S's terms."(emphasis in original)). Furthermore, the court held that parol evidence of this oral agreement was permissible to prove the defendant's intent to be bound solidarily because "[a]s the principal shareholder of the corporate defendants[,] Fagan had a material interest in securing legal services both for them and for himself." Id. Additionally, because the plaintiff's evidence showed that there was a clear agreement to hold the defendant personally liable for the legal fees of the corporate defendants, the court held that the defendant was solidarily bound to pay the legal fees. Id. at 1322.

In Barham & Churchill v. Campbell & Assoc., et al., 503 So.2d 576 (La. Ct. App. 4th Cir. 1987), the defendant appealed a summary judgment in favor of the plaintiff law firm that declared the defendant (the estate of the corporate defendant's president) personally and solidarily liable for legal fees incurred during the representation of the corporation. In reversing the trial court, the state appellate court held summary disposition was inappropriate where both parties had submitted affidavits that

averred opposite conclusions regarding the intent of the president of the corporation to assume any personal or solidary liability for the corporation's legal fees. Barham, 503 So.2d at 579.

In the present case, the facts are distinguishable from Fagan. In Fagan, the law firm had a conversation with the defendant, submitted as evidence, whereby the defendant expressly agreed to be personally liable for the payment of the legal fees. Fagan, 665 So.2d at 1321. Conversely, McClantoc's signature did not expressly indicate that McClantoc was signing personally or as the CEO of Core Products. In light of the legal requirement that solidarity of an obligation is never to be presumed and must be clearly expressed, the Engagement Letter, standing alone, does not clearly establish McClantoc's intent to be solidarily bound with Core Products for the payment of legal fees.

However, it is evident that McClantoc is the President, CEO, and Secretary of Core Products. He has a pecuniary interest in the outcome of the litigation against Core Products. Thusly, parol evidence is admissible to prove McClantoc's intent to be bound solidarily with Core Products. Fagan, 665 So.2d at 1321. In support of this contention, Frilot submits the affidavit of Joe N. Mole, lead attorney for the Acadiana Plastics lawsuit against McClantoc and Core Products. Mole declares that "[i]t was my understanding, from my communications directly with

McClantoc and from the nature of his relationship with his Company, that McClantoc would be responsible for paying all Frilot's attorney fees." (Rec. Doc. 13-9, ¶ 9). However, an affidavit by McClantoc states, "I never signed an engagement letter with Frilot personally in my own name or in my individual capacity, and I never agreed to be personally liable for the fees of Frilot." (Rec. Doc. 21-5 ¶ 2).

Ultimately, this case turns on the credibility of McClantoc, Mole, Frilot, and other evidence. In light of the conflicting affidavits regarding McClantoc's intent to bind himself in solido with Core Products for the payment of Frilot's legal fees, this Court follows the path set by the Barham opinion. At present, and ever so slightly, the intent of McClantoc is a disputed issue of material fact precluding summary judgment at this point.

While both parties concede that this case does not involve extensive documentary evidence, depositions, or other discovery, we are reminded that discovery ends in July 2010. Out of an abundance of caution, we will allow McClantoc a chance to exhaust discovery options within that time frame.

New Orleans, Louisiana, this 2nd day of June 2010.

_____
United States District Judge